**SO ORDERED.**

**SIGNED this 28th day of January, 2014.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge
_____

Designated for online use but not print publication
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In Re:** | |
| **JAMES TODD MCGUIRE,** | CASE NO. 13-21054 |
| DEBTOR. | CHAPTER 7 |
| **TMBC, LLC,** | |
| PLAINTIFF, | |
| v. | ADV. NO. 13-6072 |
| **JAMES TODD MCGUIRE; KANSAS CITY SOUTH PROPERTY GROUP, LLC; and DAVID TARTER;** | |
| DEFENDANTS. | |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DAVID TARTER'S MOTION TO DISMISS**

This adversary proceeding arises out of a prepetition lease transaction between

Plaintiff TMBC, LLC, and Defendant Kansas City South Property Group, LLC. Defendants

James Todd McGuire and David Tarter are members of Kansas City South Property Group. TMBC filed an eleven-count complaint seeking to except its claim against Debtor McGuire from discharge under § 523(a)(2), (a)(4), and (a)(6), and asserting various tort claims against all three defendants. Defendant David Tarter moves to dismiss the complaint as to him for lack of subject matter jurisdiction and questions the Court's subject matter jurisdiction over the claims against Defendant Kansas City South Property Group. This court has jurisdiction to determine the motion to dismiss.[1] The Court grants Tarter's motion to dismiss in part and denies it in part.

**THE ALLEGATIONS OF THE COMPLAINT AND RELEVANT PROCEEDINGS.**

Plaintiff TMBC, LLC, a Delaware limited liability company with its principal place of business in Springfield, Missouri, operates the Tracker Marine Boat Center, subleasing space in the Bass Pro Outdoor World Store in Independence, Missouri (Bass Pro). TMBC also subleases space to store its merchandise on Bass Pro's leased property or chooses to lease elsewhere, if Bass Pro's available space is too limited.

In January 2007, Defendant James Todd McQuire (Debtor) began employment with Bass Pro as the store's general manager. In late July 2007, Defendant David Tarter (Tarter)

---

[1] A court necessarily has jurisdiction to decide if a case is properly before it. *Amoco Pipeline Co. v. Admiral Crude Oil Corp.*, 490 F.2d 114, 116 (10th Cir. 1974) (*citing United States v. Shipp*, 203 U.S. 563, 573 (1906), and *United States v. Mine Workers*, 330 U.S. 258, 291 (1947)). This Court's jurisdiction over the parties and the subject matter derives from 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate the portions of the Complaint which are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B) and (I). There is no objection to venue or jurisdiction over the parties.

began employment as the Bass Pro receiving manager.  In January 2010, Debtor and Tarter formed Defendant Kansas City South Property Group, LLC (KC South), for the purpose of entering into a commercial lease agreement with TMBC.

In the spring of 2010, Debtor and Tarter, on behalf of KC South, negotiated a lease agreement dated April 1, 2010, with TMBC, with Debtor having authority to act on behalf of TMBC, wherein TMBC leased 2.5 acres of real property located on East U.S. 40 Highway in Blue Springs, Missouri, from KC South to store boats.  TMBC alleges that the lease was pursuant to a scheme of Debtor and Tarter to cause TMBC to lease additional storage away from the Bass Pro store although no such storage was needed.  TMBC further alleges that Debtor and Turner represented to TMBC that KC South was the title owner of the leased property, when in fact KC South did not own the property at any time and did not have an estate or other right in the property at any time sufficient to grant TMBC a leasehold interest.  TMBC has paid approximately $110,000 to KC South, but TMBC alleges that KC South has failed to perform its obligations under the lease.

On June 13, 2012, TMBC brought suit against KC South, Tarter, and Debtor in the Circuit Court of Jackson County, Missouri, at Independence.[2]  The petition is comprised of eight counts.  They are fraud (KC South), fraud (Debtor and Tarter), negligent misrepresentation (KC South), negligent misrepresentation (Debtor and Tarter), civil conspiracy (Debtor and Tarter), breach of lease (KC South), unjust enrichment (KC South), and breach of fiduciary duty (Debtor and Tarter).  Debtor and KC South filed a joint answer.

---

[2]Dkt. 24-1 at 7-17.

Tarter answered separately and filed a crossclaim against Debtor. Written discovery was served and answered.

Debtor filed a voluntary petition under Chapter 7 on April 29, 2013. The eleven-count adversary complaint was filed on July 26, 2013. Although it is similar to the Missouri state court petition, it differs in material respects. The first three counts are against Debtor only and seek to except Debtor's alleged debt to TMBC from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). The remaining counts are as follows: Count IV - Fraud (KC South); Count V - Fraud (Debtor and Tarter); Count VI - Negligent misrepresentation (KC South); Count VII - Negligent misrepresentation (Tarter); Count VIII - Civil conspiracy (Tarter); Count IX - Breach of lease (KC South); Count X - Unjust enrichment (KC South); and Count XI - Breach of fiduciary duty (Debtor and Tarter). Debtor and KC South jointly answered the complaint on August 29, 2013. They did not question the Court's jurisdiction. Tarter's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Motion) was filed on September 10, 2013. On October 15, 2013, TMBC voluntarily dismissed the Jackson County, Missouri action without prejudice.

**THE MOTION TO DISMISS, THE RESPONSE, AND THE REPLY.**

Defendant Tarter's Motion is premised upon mandatory abstention, codified in 28 U.S.C. § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain

4

from hearing such proceeding if an action is commenced, and
can be timely adjudicated, in a State forum of appropriate
jurisdiction.

Tarter contends that the five factors for mandatory abstention are present as to the claims against Tarter and KC South because: (1) The claims are state law claims or causes of action; (2) the claims would lack a federal jurisdictional basis absent Debtor's bankruptcy; (3) the claims were commenced in the Circuit Court of Jackson County, Missouri; (4) the claims are capable of timely adjudication in the state court; and (5) the claims are non-core proceedings.[3] TMBC opposes the Motion, asserting that supplemental jurisdiction under 28 U.S.C. § 1367 provides an independent basis for federal jurisdiction of the claims and that the claims cannot be timely adjudicated in state court because the petition filed in Jackson County, Missouri, has been dismissed.[4] Tarter's reply raises for the first time the contentions that the claims against Tarter and KC South are not within the "related to" jurisdiction of this Court and that if mandatory abstention does not apply, the Court should abstain under the permissive abstention doctrine codified at 28 U.S.C. § 1334(c)(1).[5] Tarter also argues that the dismissal of the Jackson County litigation does not defeat mandatory abstention because the factors for abstention should be applied as of the time the adversary proceeding was filed.

**THE BANKRUPTCY COURT HAS JURISDICTION OVER COUNTS I, II, III, V, AND XI, BUT LACKS JURISDICTION OVER COUNTS IV, VI, VII, VIII, IX, and X.**

---

[3] Dkt. 24.

[4] Dkt. 30.

[5] Dkt. 34.

5

Mandatory and permissive abstention are applicable only to claims within the subject matter jurisdiction of the Court. Analysis of the Motion must therefore start with an examination of the Court's jurisdiction over the adversary complaint. This examination must include the claims against all the parties, including KC South, even though KC South admitted in its answer that this Court has jurisdiction over the claims against it. The subject matter jurisdiction of federal courts, and particularly bankruptcy courts, is limited. "[T]o ensure its . . . power is exercised properly, a federal court must 'in every case and at every stage of the proceeding, satisfy itself as to its own jurisdiction.'"[6] This principle is codified in Civil Rule 12(h)(3),[7] which provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

In 28 U.S.C. § 1334(b), Congress granted the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Authority to refer such matters to the bankruptcy courts is found in 28 U.S.C. § 157(a). Matters which arise under title 11 are those created by title 11.[8] Exceptions to discharge are created by title 11 and therefore are within the "arising under" jurisdiction. This Court therefore has jurisdiction of Counts I through III of the complaint. "Arising in" proceedings are administrative matters which arise only in bankruptcy cases.[9]

---

[6] *Mires v. United States*, 466 F.3d 1208, 1211 (10th Cir. 2006) (*quoting Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980)).

[7] Fed. R. Civ. Pro. 12(h)(3), made applicable here by Fed. R. Bankr. P. 7012(b).

[8] 1 *Collier on Bankruptcy* ¶ 3.01[3][e][i] at 3-14 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2013).

[9] *Id.*, ¶ 3.01[e][iv] at 3-20 to 3-21.

6

None of the claims in the complaint are within the "arising in" jurisdiction.

Counts IV through XI of the complaint are state law claims which are within the bankruptcy court's jurisdiction only if they are "related to" the bankruptcy case. "[A] civil proceeding is related to a bankruptcy case when 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"[10] Count V, fraud against Debtor and Tarter jointly, and Count XI, breach of fiduciary duty against Debtor and Tarter jointly, may have an effect on the bankruptcy case, since a judgment against Debtor would constitute a claim against the estate. They are therefore within the "related to" jurisdiction of the Court.

However, TMBC does not argue that the claims asserted solely against KC South (Counts IV, VI, IX, and X) or the claims asserted solely against Tarter (Counts VII and VIII) are related to the bankruptcy case. This is clearly correct, since resolution of these claims will not have any effect on Debtor's bankruptcy proceeding.

TMBC argues that these claims are nevertheless within the jurisdiction of this Court under 28 U.S.C. § 1367, "Supplemental Jurisdiction." In any civil case of which a district court has original jurisdiction, § 1367 grants the district court supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[11] The statute only grants such supplemental jurisdiction to

---

[10] *Id.*, ¶ 3.01[3][e][ii] at 3-16 (*quoting Pacor, Inc., v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

[11] 28 U.S.C. § 1367.

7

district courts, and there is no reference to bankruptcy courts. Also, it applies only to "civil cases," without mentioning bankruptcy cases or proceedings. There is no Tenth Circuit Court of Appeals case on the question whether a bankruptcy court may exercise supplemental jurisdiction, but the majority of courts have held that a bankruptcy court, being a court whose jurisdiction is more limited than that of a district court, does not have such authority.[12] A holding that a bankruptcy court has supplemental jurisdiction would in essence expand the "related to" jurisdiction of the bankruptcy court "to encompass proceedings that share a factual or logical 'nexus' with a core bankruptcy proceeding, even if the outcome will not affect the bankruptcy estate."[13] Those courts finding that bankruptcy courts do not have supplemental jurisdiction are influenced by the rules that jurisdictional statutes are to be read narrowly and that bankruptcy courts cannot exceed their "related to" jurisdiction.[14] The Supreme Court's decision in *Stern v. Marshall* persuasively supports this view. As one commentator has stated, "The Ninth and Second Circuit's view that bankruptcy courts may exercise supplemental jurisdiction is precisely what *Stern* disavows. By exercising supplemental jurisdiction pursuant to § 1367(a), bankruptcy judges would exercise the Article III judicial power to determine state claims affecting third parties that do

---

[12] Eric C. Surette, Annotation, *Exercise of Supplemental Jurisdiction by Bankruptcy Courts Pursuant to 28 U.S.C.A. § 1367*, 52 A.L.R. Fed.2d 243, § 2 (2011), *available on* Westlaw at 52 A.L.R. Fed.2d 243.

[13] *Scully v. Danzig (In re Valley Food Services, Inc.)*, 400 B.R. 724, 728-29 (Bankr. W.D. Mo. 2008).

[14] *See id.* at 729-30.

8

Case 13-06072   Doc# 40   Filed 01/28/14   Page 8 of 12

not impact the bankruptcy estate."[15]  The Court predicts that the Tenth Circuit would follow the majority consensus and hold that a bankruptcy court cannot exercise supplemental jurisdiction, particularly in light of *Stern v. Marshall*.

The Court therefore dismisses Counts IV, VI, IX, and X against KC South and Counts VII and VIII against Tarter for lack of subject matter jurisdiction.  The Court recognizes that this ruling means that if TMBC wishes to pursue the dismissed claims while simultaneously pursuing the objection to discharge, it will need to litigate the same facts and similar claims in two courts.  The judicial structure dictates this somewhat unfortunate result.

**THE ELEMENTS FOR MANDATORY ABSTENTION ARE NOT PRESENT AS TO COUNTS I, II, III, V, AND XI.**

Mandatory abstention applies only to "a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11."[16]  Counts I through III arise under title 11 and are not subject to mandatory abstention. The only two claims within the "related to" jurisdiction, and therefore possibly within the mandatory abstention statute, are Counts V and XI against Debtor and Tarter jointly for fraud and breach of fiduciary duty.  But as to these claims, mandatory abstention does not apply since there is no parallel state court action in which they are asserted and can be timely adjudicated.

---

[15] Natallie J. Santana, *A Statutory and Constitutional Analysis of Whether Bankruptcy Courts May Exercise Supplemental Jurisdiction Pursuant to 28 U.S.C.A. § 1367*, 22 Norton J. Bankr. L & Prac. 1, Art. 5 (2013), *available on* Westlaw 22 JBKRLP 1 Art. 5.

[16] 28 U.S.C. § 1334(c)(2).

9

The Court rejects Tarter's argument that for purposes of mandatory abstention, the pendency of the state court action must be determined as of the date of filing of the adversary complaint, which in this case was before the dismissal of the Jackson County, Missouri proceeding. Tarter is correct that subject matter jurisdiction, such as that based upon diversity of citizenship, "'ordinarily depends on the facts as they exist when the complaint is filed,'"[17] and is determined as of the date of filing. "But like most rules, 'this one is susceptible to exceptions.'"[18] Although the parties have not cited and the Court has not found any cases applying an exception in connection with mandatory abstention, the plain meaning of abstention compels this result. The foundation of mandatory abstention is the existence of a parallel action in state court which can timely adjudicate the issues pending in the bankruptcy court. Congress's intent when enacting the mandatory abstention provision was the striking of "a balance between the competing interests of bankruptcy and state courts."[19] Abstaining because of a state court interest that existed as of the commencement of the bankruptcy proceeding but not at the time of the exercise of abstention would not effectuate a balance of interests.

In this case, there is currently no pending state court proceeding and therefore no competing state court interest. TMBC has elected to dismiss the state court proceeding. If

---

[17] *Mires*, 466 F.3d at 1212 (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)).

[18] *Id*.

[19] *Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000) (*citing* 130 Cong, Rec. S8, 8889 (daily ed. June 29, 1984) (statement of Sen. Dole)).

this Court were to abstain, there would be no pending claims against KC South and the number of claims pending against Tarter would be significantly reduced.  Mandatory abstention was not designed to compel a plaintiff to litigate matters which are within the bankruptcy court's jurisdiction in state court.  Mandatory abstention gives precedence to the state court litigation of state-law "related to" matters only when the state court litigation is pending and abstention will result in a timely adjudication in state court.  The conditions for mandatory abstention are not present.

**THE COURT DECLINES TO ABSTAIN FROM RULING ON COUNTS V AND XI.**

Tarter suggests that even if the conditions for mandatory abstention are not present, the Court should decline to hear the claims against Tarter under the permissive abstention provision of 28 U.S.C. § 1334(c)(1).  It permits the Court, "in the interest of justice, or in the interest of comity with State courts or respect for State law [to abstain] from hearing a particular proceeding arising in title 11 or arising in or related to a case under title 11."

The Court finds no basis for abstention in this case.  This Court is uniquely qualified to determine dischargeability.  Resolution of the claims of TMBC against Debtor is necessary to determine whether in fact Debtor has liability to TMBC and, if so, the amount of that liability.  Severance of the claim and dischargeability litigation would result in wasteful multiple proceedings.  The state law issues of fraud and breach of fiduciary duty are not complex.  There is no parallel state court proceeding to which this Court could defer.

**CONCLUSION.**

The Court lacks subject matter jurisdiction over Counts IV, VI, VII, VIII, IX, and X,

which are hereby dismissed.  The Court has jurisdiction over Counts I, II, III, V, and XI. The Court shall not abstain from hearing these counts under either mandatory abstention or permissive abstention.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure, which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this proceeding.  A judgment based upon this ruling, dismissing Counts IV, VI, VII, VIII, IX, and X, will be entered on a separate document.

**IT IS SO ORDERED.**

# # #